## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **WILLIE GILLIAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-0622-CVE-FHM** |
| | ) | |
| **JOCO ASSEMBLY, LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Motion of Defendant, JOCO Assembly, LLC (JOCO) for Summary Judgment (Dkt. # 30). Plaintiff alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, §§ 1101-2005 (OADA), and 42 U.S.C. § 1981 for racial discrimination on the theories of disparate treatment, hostile work environment, and wrongful termination. Dkt. # 2. Defendant moves for summary judgment on the grounds that there is no evidence to support the claim that plaintiff was terminated based on his race and that plaintiff cannot establish a prima facie case of hostile work environment. Dkt. # 30. Plaintiff responds that he can make a prima facie case of racial discrimination for disparate treatment, hostile work environment, and wrongful termination. Dkt. # 35.

## I.

Plaintiff, an African-American, was sent to work at JOCO in March 2014 by Standby Personnel, Inc., a temp agency. Dkt. # 30, at 2. Plaintiff worked in the fabrication area making latches for bus windows. Dkt. # 35, at 11. Also working at JOCO at the same time as plaintiff was

a Caucasian, Kevin McCombs. Dkt. # 30, at 3. Plaintiff believed that McCombs was his supervisor. Dkt. # 35-1, at 21. Defendant asserts that McCombs was a "lead person," not a supervisor, and had no authority to hire and fire. Dkt. # 30, at 3. Plaintiff alleges that McCombs "constantly" called him "nigger" and that plaintiff told McCombs on more than one occasion to stop using that word. Dkt. # 35-1, at 10-11. Plaintiff asserts that McCombs felt comfortable enough to use the epithet casually to refer to plaintiff and other African-American JOCO employees because McCombs had "a tendency to date black girls," wore his hair in cornrows, and smoked with the "brothers" every day. Dkt. # 30-1, at 7, 14-15.

On May 16, 2014, plaintiff was assigned to work in the "kick-out" area rather than the fabrication area where he usually worked. Dkt. # 30, at 4. Work in the kick-out area involves cutting rubber bushings to go inside glass frames. Id. Plaintiff alleges that McCombs assigned him to the kick-out area and gave him scissors that did not work properly. Dkt. # 35-1, at 13. Plaintiff asserts that he requested a new pair of scissors from McCombs, but because McCombs was hanging out with his girlfriend instead of helping him, plaintiff got a new pair of scissors himself. Id. at 13-14. Plaintiff alleges that another Caucasian employee, Chris Jones,[1] told McCombs that plaintiff traded out his scissors instead of waiting for McCombs. Id. at 14. Plaintiff confronted Jones about Jones tattling to McCombs, and plaintiff said, "Well, you're lucky you ain't went to prison because the snitches get stitches." Dkt. # 30-1, at 22-23. Plaintiff alleges that after he started working again, McCombs came up to plaintiff and told him, "You niggers don't listen." Dkt. # 35-1, at 14. Plaintiff alleges that he then put down his scissors and pursued McCombs as McCombs went to speak with

---

[1]        Plaintiff believes that Jones may be McCombs's cousin. Dkt. # 35-1, at 13.

plant manager Rob Martin. Id. Plaintiff asserts that Martin fired him based on what McCombs told Martin about the incident in the kick-out room. Id. at 5.

Defendant asserts that plant supervisor Fernando Villa assigned plaintiff to the kick-out area on May 16, 2014. Dkt. # 30, at 4. Defendant asserts that Villa heard people yelling at each other in the kick-out room, and that at the same time an unknown employee came to tell Villa that plaintiff was threatening Jones. Dkt. # 30-2, at 2. Defendant asserts that other employees in the kick-out area told Villa that plaintiff had told Jones "snitches get stitches," "I am going to kick your ass," "people like you in jail will not survive," and "I have a knife and I am going to cut you." Id. Defendant asserts that Villa told plaintiff to work in the fabrication area for the rest of the day, but that less than an hour later Villa again heard yelling from kick-out area, and when he went to see what was happening, Villa saw plaintiff again yelling at Jones. Id. Defendant asserts that Villa told Martin what happened, and they decided that plaintiff would be fired with no input from McCombs. Id. at 2-3. When plaintiff was terminated, no one at JOCO conducted an investigation into what happened. Dkt. # 30-3, at 3.

Plaintiff brought suit against defendant under Title VII, the OADA, and 42 U.S.C. § 1981 for racial discrimination on the theories of disparate treatment, hostile work environment, and wrongful termination. Dkt. # 2. Defendant moves for summary judgment on the grounds that there is no evidence to support the claim that plaintiff was terminated based on his race and that plaintiff cannot establish a prima facie case of hostile work environment. Dkt. # 30.

## II.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as

a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Kendall v. Watkins</u>, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" <u>Id.</u> at 327 (quoting Fed. R. Civ. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." <u>Id.</u> at 251-52. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

4

## III.

Plaintiff alleges claims under Title VII, the OADA, and 42 U.S.C. § 1981 for racial discrimination on the theories of disparate treatment, hostile work environment, and wrongful termination. Dkt. # 2. Defendant moves for summary judgment on the grounds that there is no evidence to support the claim that plaintiff was terminated based on his race and that plaintiff cannot establish a prima facie case of hostile work environment. Dkt. # 30. Plaintiff responds that he can make a prima facie case of racial discrimination for disparate treatment, hostile work environment, and wrongful termination. Dkt. # 35.

Under Title VII, it is unlawful "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove a Title VII violation through either direct or circumstantial evidence. See Furr v. AT & T Techs., Inc., 824 F.2d 1537, 1548-49 (10th Cir. 1987). Direct evidence includes "oral or written statements on the part of a defendant showing a discriminatory motivation. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000). Plaintiff argues that McCombs's repeated use of racial slurs, and telling plaintiff "You niggers don't listen" before complaining to management about plaintiff, constitute direct evidence of intentional racial discrimination. Dkt. # 35, at 15. However, McCombs's statements are not direct evidence. McComb's did not say that he was acting against plaintiff because of his race. He used a racial epithet and espoused a negative racial stereotype. These statements support plaintiff's claim that McComb was acting out of racial animus, but they are circumstantial evidence, not direct. See Hawkins v. Schwan's Home Serv., Inc., 778 F.3d 877, 883 n.4 (10th Cir. 2015) ("Direct evidence is evidence from which the trier of fact

5

may conclude, without inference, that the employment action was undertaken because of the employee's protected status . . . .") (quoting Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008)).

As plaintiff presents no direct evidence of a Title VII violation, the Court evaluates plaintiff's Title VII claims according to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008).

> Under the McDonnell Douglas framework, the plaintiff must carry the initial burden under the statute of establishing a prima facie case of [discrimination or retaliation]. Once the plaintiff has established a prima facie case, [t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

Kendrick, 220 F.3d at 1226 (second alteration in original) (internal quotation marks and citations omitted). Section 1981 claims for employment discrimination based on race involve the same analysis as those brought under Title VII. Lounds v. Lincare, Inc., 812 F.3d 1208, 1221 (10th Cir. 2015); Carney v. City & Cnty. of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008); Baca v. Sklar, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005). Moreover, OADA claims are coextensive with Title VII claims. See, e.g., Bennett v. Windstream Commc'ns, Inc., 792 F.3d 1261, 1269 (10th Cir. 2015); Cunningham v. Skilled Trade Servs., Inc., No. CIV-15-803-D, 2015 WL 6442826, at *3 (W.D. Okla. Oct. 23, 2015). Thus, all of plaintiff's claims will all be analyzed under Title VII law.

## A.

To state a prima facie case of discrimination under Title VII, a plaintiff must show that: "(1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less

favorably than others (e.g., the position at issue remained open after the adverse employment action)." EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 483-84 (10th Cir. 2006) (quoting Exum v. U.S.Olympic Comm., 389 F.3d 1130, 1134 (10th Cir. 2004)). Plaintiff has established a prima facie case of discrimination: (1) plaintiff is African-American; (2) plaintiff was hired for his position, and there is no evidence he performed it unsatisfactorily until the day he was terminated; (3) plaintiff was fired from his position; and (4) the position remained open after plaintiff was fired.

The burden therefore shifts to defendant to articulate a legitimate, nondiscriminatory reason for the employment action. Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1308 (10th Cir. 2005). Defendant has carried its burden by asserting that plaintiff was terminated because he got into an argument with Jones, threatened Jones, and disobeyed Villa's instructions to work in the fabrication area after the argument with Jones.

Plaintiff must show that defendant's reasons for firing him were a pretext for race discrimination. Adamson, 514 F.3d at 1145. However, there is no evidence that the people who made the decision to terminate plaintiff's employment, Martin and Villa, were motivated by race. Plaintiff presents evidence of racial bias from no one at JOCO other than McCombs, and it is undisputed that McCombs was not a decisionmaker.[2] Thus, for plaintiff to show pretext he must make a factual showing that McCombs harbored racial animus toward black employees and make a convincing legal claim that McCombs's racial animus should be imputed to JOCO despite the fact that McCombs had no power to terminate anyone. See BCI Coca-Cola Bottling Co., 450 F.3d at 484.

---

[2]     Language in McCombs's written statement that indicates he may have accompanied Martin in escorting plaintiff out of the building, Dkt. # 35-4, at 1, does not create a genuine dispute of material fact as to whether McCombs was a decisionmaker.

Liability under Title VII based on the bias of an employee who is not a decisionmaker is known as "subordinate bias," "cat's paw," or "rubber stamp" theory. The subordinate bias theory was adopted in this circuit in <u>BCI Coca-Cola Bottling Co.</u>, in which the Tenth Circuit recognized that without subordinate bias liability employers could evade culpability "in the face of rampant race discrimination among subordinates through willful blindness as to the source of reports and recommendations." <u>Id.</u> at 486. In <u>BCI Coca-Cola Bottling Co.</u>, the plaintiff was fired after having an argument with his supervisor. <u>Id.</u> at 481. Plaintiff, an African-American man, presented evidence that his supervisor made many race-based remarks during work hours and subjected African-American employees to greater scrutiny than Hispanic employees. <u>Id.</u> However, the district court granted the defendant's motion for summary judgment because the supervisor did not have the authority to fire plaintiff; the supervisor had made a report to an employee in HR who made the termination decision without ever knowing the plaintiff's race. <u>Id.</u> at 483. Thus, the district court held the plaintiff did not establish a genuine issue of material fact as to whether the defendant's proffered reason for firing the plaintiff was a pretext for racial discrimination. <u>Id.</u>

The Tenth Circuit reversed, holding that a plaintiff may prevail on a subordinate bias claim if the plaintiff establishes that "the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action." <u>Id.</u> at 487. In adopting this standard, the Tenth Circuit explained that the plaintiff does not need to show that the decisionmaker is so beholden to the subordinate that the subordinate is the actual decisionmaker. <u>Id.</u> However, the causal element requires "more than mere 'influence' or 'input' in the decisionmaking process." <u>Id.</u> An employer can break the causal link by conducting an independent investigation, but the investigation must be adequate to confirm what happened from sources other than the biased subordinate. <u>See</u> <u>id.</u>

8

at 492-93 (holding that the HR employee pulling plaintiff's personnel file was not an adequate independent investigation because the employee did not seek any other version of events); <u>Lobato v. N.M. Env't Dep't</u>, 733 F.3d 1283, 1295 (10th Cir. 2013) ("[A]n employer is not liable under a subordinate bias theory if the employer did not rely on any facts from the biased subordinate in ultimately deciding to take an adverse employment action–even if the biased subordinate first alerted the employer to the plaintiff's misconduct."). For example, "simply asking an employee for his version of events may defeat the inference than an employment decision was racially discriminatory." <u>BCI Coca-Cola Bottling Co.</u>, 450 F.3d at 488 (citing <u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d 1220, 1231-32 (10th Cir. 2000)).

Here, there are genuine disputes of material fact regarding subordinate bias liability. Plaintiff has made a factual showing that McCombs harbored racial animus toward black employees through plaintiff's testimony that McCombs "constantly" referred to plaintiff and other African-American employees as "niggers" despite plaintiff telling McCombs not to use that language, and through plaintiff's testimony that McCombs said "You niggers don't listen" before going to talk to management. Moreover, the parties have presented evidence that supports two very different versions of what happened at JOCO the day plaintiff was fired. Construing the record in the light most favorable to plaintiff, a jury could determine that defendant is liable under the subordinate bias theory because McCombs was the employee who told the decisionmakers about the argument between plaintiff and Jones, and defendant did not ascertain plaintiff's side of the story or conduct an independent investigation to break the causal link between McCombs and the decisionmakers. <u>See</u> Dkt. # 30-3, at 3 (Deposition testimony of JOCO HR Director Donna Herrian) ("Q: You didn't do an investigation of your own? A: No. Q: Did anyone else do an investigation to your knowledge?

A: Not at that time."); see also Dkt. ## 35-4, 35-5 (written statements of McCombs and Villa written as part of JOCO's investigation of plaintiff's termination a year and a half after the incident occurred). Thus, defendant's motion for summary judgment should be denied as to plaintiff's claim for racially discriminatory termination[3] under Title VII, § 1981, and the OADA.

## B.

To state a prima facie case of hostile work environment, a plaintiff must allege: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on his membership in a protected group; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of plaintiff's employment and created an abusive working environment. Harsco Corp. v. Renner, 475 F.3d 1179, 1186 (10th Cir. 2007). The Tenth Circuit has established that the severe and pervasive nature of the alleged harassment must be established under objective and subjective standards. Harrison v. Eddy Potash, Inc. 248 F.3d 1014, 1023 (10th Cir. 2001). Concerning the subjective aspect of a hostile work environment, the victim must show that he "subjectively perceive[d] th[at] environment to be abusive." Id. (second alteration in original). The objective component of a hostile work environment claim requires a plaintiff to present evidence that a "reasonable person" would find the same harassment so severe and pervasive that the workplace is objectively hostile or abusive. Morris v. City of Colo. Springs, 666 F.3d 654, 664 (10th Cir. 2012). A court must consider the totality of the

---

[3]    The Court interprets the claims plaintiff has separated into "disparate treatment" and "wrongful termination" as one claim that defendant fired plaintiff based on racial discrimination. Plaintiff argues disparate treatment because he was fired whereas Jones, who was also involved in the argument, was not punished. Dkt. # 35, at 17-18. The claim that plaintiff was fired because he is African-American is a single claim, and separating "disparate treatment" from "wrongful termination" obscures the law on employment discrimination and the evidence presented to support plaintiff's claim.

circumstances and consider factors such as the frequency of the discriminatory conduct, the severity, whether the conduct is physically threatening or merely an offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. Id. The Tenth Circuit has described pervasiveness and severity as "independent and equal grounds" by which a plaintiff may meet this element of a hostile work environment claim, but the grounds "'are, to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once . . . , while a relentless pattern of less harassment that extends over a long period of time also violates the statute.'" Tademy v. Union Pac. Corp., 614 F.3d 1132, 1144 (10th Cir. 2008) (alteration in original) (quoting Cerros v. Steel Techs, Inc., 288 F.3d 1040, 1047 (7th Cir. 2002)). An employer can be held vicariously liable for an employee's unlawful harassment if the employee was a supervisor, but otherwise an employer can be found liable if it was negligent in allowing a hostile work environment to exist. Vance v. Ball State Univ., 133 S. Ct. 2434, 2441 (2013).

Plaintiff is an African-American man, who was subject to unwanted harassment based on his race. The question is whether McCombs referring to plaintiff as "nigger" everyday and telling him "You niggers don't listen" on his last day at JOCO was severe or pervasive enough to alter a term, condition, or privilege of plaintiff's employment and create an abusive working environment. Defendant argues that McCombs's use of "nigger" did not create a hostile work environment because McCombs felt "comfortable" using the word and was not using it in an opprobrious manner. But in Lounds, the Tenth Circuit made very clear that the severity and pervasiveness analyses "should not be based on whether an alleged harasser possessed the motivation or intent to cause discriminatory harm or offense." Lounds, 812 F.3d at 1228. Moreover, Lounds includes an extended discussion on the corrosive effect of saying "nigger" in the workplace. Id. at 1229-30 ("[P]erhaps

11

no single act can more quickly alter the conditions of employment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor. This single incident might well have been sufficient to establish a hostile work environment.") (quoting <u>Ayissi-Etoh v. Fannie Mae</u>, 712 F.3d 572, 577 (D.C. Cir. 2013)) (internal quotation marks omitted). Although <u>Lounds</u> acknowledges that in certain contexts "nigger" can be viewed as less offensive, the Tenth Circuit determined that "this is the kind of question that should be left to the judgment of a reasonable jury." <u>Id.</u> at 1230. Plaintiff asserts that McCombs called used the racial epithet everyday, describing it as "constant." Thus, the Court finds that plaintiff has set forth facts sufficiently pervasive to create an objectively hostile work environment.

Plaintiff must also show that he subjectively perceived the work environment to be hostile. Plaintiff testified that he told McCombs not to call him "nigger" his first week at JOCO because it made him feel uncomfortable. Dkt. # 35-1, at 7. Plaintiff also testified that he complained to McCombs "plenty" of other times, telling McCombs: "Kevin don't do that, stop that, please don't do that, I don't like it." <u>Id.</u> at 19. Plaintiff testified that McCombs would call him by saying "Come here my nigger. Come here my nigger," and that McCombs would use the word "just constantly, constantly." <u>Id.</u> at 10. Plaintiff repeatedly described the working environment as "uncomfortable." <u>Id.</u> at 10-11, 16. Defendant asserts that plaintiff objected only because McCombs was not African-American, not because he perceived any racial animus, which defendant argues is evidenced by the fact that plaintiff did not complain to anyone other than McCombs. Dkt. # 30, at 11. Although plaintiff did not use the magical language in his deposition testimony by saying he felt the environment was "hostile," plaintiff clearly indicated that McCombs's language made him very uncomfortable. Moreover, JOCO's HR Director Donna Herrian testified that plaintiff was not

provided with a handbook when he began working at JOCO and that it's likely plaintiff had no idea to whom to report a discrimination complaint. Dkt. # 35-3, at 3. Plaintiff's testimony shows that he thought McCombs was his supervisor, and had little or no contact with any other employees in management. See Dkt. # 35-1, at 3-5, 18-19, 20-21. Additionally, plaintiff testified that he reported McCombs's conduct to an employee of Standby, the temp agency that placed plaintiff at JOCO. Id. at 18. Viewing the record in the light most favorable to plaintiff, the Court finds that plaintiff has provided facts to satisfy the subjective prong of the hostile work environment test. Additionally, there is a genuine dispute of material fact regarding whether McCombs was plaintiff's supervisor. McCombs is described as a "lead person," Dkt. # 30-2, at 3, and plaintiff thought McCombs was his supervisor. Dkt. # 35-1, at 21. Thus, defendant's motion for summary judgment should be denied as to plaintiff's claim for hostile work environment under Title VII and § 1981.

**IT IS THEREFORE ORDERED** that Motion of Defendant, JOCO Assembly, LLC, for Summary Judgment (Dkt. # 30) is **denied**.

**DATED** this 1st day of November, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

13